The opinion of the Court was delivered by
Duncan J.
The right of the plaintiff to a survey of 695 acres, on his warrant, (including his improvement made in 1775,) of 360 acres, which survey remains unreturned against *202 the defendants’ subsequent warrant, survey, and possession, can never be supported. The commissioners of property under the proprietaries of the province, although bound by certain established usages and instructions, where there-were conflicting rights, might depart from them in the acceptance of a survey containing a surplus, where there w as no intervening claim. It was only a matter between such warrantee and the proprietaries, who might confirm such survey. But when the land officevunder the State government became regulated by law, the officers were bound by the law, and had no discretionary powers. By the act of 1st of Aprily 1784, 2 Sm. L. 102, which relates to the granting and disposing of all unappropriated land within the State purchased from the Indians, it is enacted, that the quantity of land granted'to any one person, shall not exceed 400 acres: and by the act of 30th December, 1786, 2 Sm. L. 395, which restricts all the lands within all the purchases made under the proprietary government, and secures the pre-emption right to settlers, the right is confined to 400 acres.
Whatever opinions may have been entertained or decisions made under the special circumstances of particular cases, where surveys have been returned and accepted, and which I desire to leave just as I found them, it does seem to me, that a right to a survey exceeding 400 acres, and ten per cent., surplus, cannot be maintained ; yet I do not say, that a survey which has been returned and accepted, where there has been no intervening right, Could be bound down to that exact limit; and where there is an improvement called for in a warrant, and an established settlement, with boundaries fixed by adjoining surveys, or consentible lines, although the warrant might be for a less quantity than 400 acres, my opinion is, that a survey might be legally made of 400 acres and 10 per cent, surplus, the act of taking out the warrant not being considered as a relinquishment of all the land within his claim. Davis v. Keefer. 4 Binn. 161.
The present plaintiff on his warrant of 360 acres, would have a clear right to a survey of 440 acres, and if such had been his survey, its validity could never have been questioned. There was evidence given, that this surplus quantity was by the advice of the surveyor, who two days afterwards took out a warrant, and 22 years after, had a survey made of 250 acres. The warrant was in the name of Joseph Dob *203 bin, but was taken out by the surveyor and Kirkpatrick. Kirkpatrick, in the same year, articles to sell to William M'-Kee, but no conveyance has been executed, and a considerable part of the purchase money remains unpaid.
I do not consider it necessary to inquire minutely into all the questions on which the Court’s opinion was desired, the same question being presented in different forms, but as the charge is deemed erroneous in many substantial points, I will content myself with stating those which will embrace all the really controverted ground. The Court instructed the jury, that the survey of the plaintiff was void in tolo, and that the defendants could legally make a survey on the warrant of Dobbin, without the consent or knowledge of Blair. This cannot be right.—That a surveyor should include double the quantity in the warrant of a settler, directly after take out a warrant for the surplus, and at the expiration of twenty-two years, enter, and cut out such surplus where he pleases, without regard to the description of the warrant, relation to the situation of the settler’s improvfements, or to the quality of the land, is a proposition that never can be supported ; nor could this be done by leaving to the settler his cleared land, but running elsewhere at the pleasure of the party. It became, in that case, the duty of the surveyor to return the matter specially to the Board of Property, who would have taken order on it, brought the parties before them to a hearing on notice, and made such decree as justice and equity required, by a special direction to the surveyor in what manner the respective warrants were to be surveyed. If either party was dissatisfied with this decision and survey, the Courts of justice were open. But they were not shut against the plaintiff, until he had brought his case before the Board, and had their previous decision; for if his survey was void, as the Court seem to think it was, there would be no greater difficulty in a jury ascertaining his right on his settlement and warrant, than arises-in the case of every settler who brings his ejectment without survey ; and a survey including what ought not to have been included, can it place him in a worse situation as to that which ought to have so done, than if he had no survey ? It would be void as to the surplus, but valid as to that which the surveyor might legally survey. This case has a very striking resemblance to that of Caufman v. The Congregation of Cedar Spring. 6 Binn. 59. *204 There, as here, the congregation had no re-survey, or decisión of the Board of Property : there, as here, they complained of the conduct of the surveyor, gutting the survey at kis own pleasure: there, as here, they shewed the boundaries of their claim.' The Court there, say, that never having acquiesced, they hád a right to contend the surveyor had done the wrong. In that case, the surveyor had no interest, but here he had, and it was such conduct as that a jury might have inferred fraud. If he, as was contended, encouraged Blair to swell the quantity, by taking in rough and hilly lands, and then having included them, did take out a warrant immedidtely after, and leaving him this rough land, take from him the woodland which his settlement and warrant entitled him to, cutting him off from the river, and from a mill seat, the leading call next to his improvement, the river, and his other described boundaries, the monuments ascertaining his claim, this would be a fraud; not a constructive, but an actual one ; a fraud, which the whole conduct of the party loudly proclaimed, and which no man could mistake ; and if a fraud in the owner, who was the surveyor that led the settler into this mistake, that fraud was not purged by the agreement to convey.—Even, had an absolute deed been given, and the whole purchase money paid, it would not have this effect, for, in this conflict between parties claiming under original title, the only question is, who is entitled to the survey, the survey being made, returned, and accepted of; and a conveyance to an innocent purchaser without notice, is not protected; for the question is not, who has obtained the survey, return, and patent, even where there is a purchaser for a valuable consideration without notice, but who ought to have it, unless ¡there hse been some culpable omission, or acquiescence inducing the purchase. Were this not the law, the consequences of the doctrine of a party being a, purchaser without notice, would have most alarming consequences. The patent does not estop. We can lift up the curtain and look beyond even a patent, in any case of fraud committed by a party or a stranger, and much more so, where the surveyor is himself a party. There was error in the Court stating to the jury, that if it were possible fraud could be inferred, still the defendant, an innocent purchaser, without notice of the alleged fraud, was protected; there could bo no recovery against him. *205 The difficulty which led the Court into error, arises from -the very nature of our original land titles existing in many cases ; but it is not insuperable ; it forms no bar to a recovery. Two surveys interfering partially, where the dispute arises from description, or where the complaint is, that the surveyor has allowed a greater extent on a Water, than his instructions would justify, in all thes.e cases a jury may decide without any previous order or decision of the Board of Property, whose decisions do not bind the rights of the party, nor are they ever necessary to give this Court jurisdiction. The objection is the want of- certainty. Id certurn e-sf, quod cerium reddi potest. A jury must finally decide the question, although there were ten thousand decisions of the Board of Property. The jury have before them the evidence of the settlement and warrant of Blair, the evidence of the surrounding lands, the place of the improvement, the quality of the soil, the survey made for Blair, the survey made on Dobbin’s warrant, and however much desirable a view might be, whatever greater certainty might be attained by a jury on the ground, still the difficulty is not so insuperable as to prevent a Court and jury from ascertaining and fixing the land to which Blair is entitled, by his settlement and warrant; the- land which ought to have been surveyed for him, and marking it on a diagram returned with their verdict. The difficulty arises more from the misconduct and negligence of Parker than Blair. The surveyor, in 1814, had no right to garble the land at his will and pleasure, and he should have returned the matter specially to the Board of Property. Merchant and Bright v. Millison, & Sm. L. 165. But not having done so, the plaintiff is not deprived of his right to a trial by a jury in the first instance, and is not obliged to petition the Board of Property for his right, nor to await their decision, because he is not bound by it. However convenient it may be to have recourse in some instances to this tribunal, (which is not a judicial one in any sense,) it is not obligatory in this.
Judgment reversed, and a venire facias . de novo awarded.